IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

NATHANIEL TRUJILLO,

    Plaintiff,

v.                                                         No. CV 17-53 JTM/CG

CITY OF HOBBS, et al.,

    Defendants.

## **PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

**THIS MATTER** is before the Court on *Defendant City of Hobbs' Motion to Dismiss Plaintiff's Claims That it Violated NMSA 1978, Section 60-3A-6.1* (the "Motion to Dismiss"), (Doc. 32), filed July 31, 2017; *Plaintiff's Response to Defendant City of Hobbs' Motion to Dismiss Plaintiff's Claims That it Violated NMSA 1978, Section 60-3A-6.1*, (Doc. 34), filed August 14, 2017; and Defendant City of Hobbs' *Reply in Support of Defendant's Motion to Dismiss Plaintiff's Claims That it Violated NMSA 1978, Section 60-3A-6.1*, (Doc. 45), filed September 5, 2017.

On August 5, 2019, United States District Judge J. Thomas Marten referred this matter to the undersigned to make findings of fact, conduct legal analysis, and recommend an ultimate disposition. (Doc. 79). After considering the parties' filings, the record, and the relevant law, the Court **RECOMMENDS** that *Defendant City of Hobbs' Motion to Dismiss Plaintiff's Claims That it Violated NMSA 1978, Section 60-3A-6.1*, (Doc. 32), be **DENIED**.

**I.  Factual Background**

On the evening of January 16, 2015, into the early hours of January 17, 2015, Plaintiff Nathaniel Trujillo was at Diamond Lil's, a bar in Hobbs, New Mexico. (Doc. 1 at 3). When the bar closed, Mr. Trujillo sat in the rear parking lot, waiting in the passenger seat of his friend's car. *Id.* Kyle Laughrin, another patron exiting Diamond Lil's, walked into the rear parking lot and began waving a handgun and pointing the weapon at the vehicle where Mr. Trujillo was seated. *Id.* Concerned for the safety of himself and the other patrons in the parking lot, Mr. Trujillo exited the vehicle and asked Mr. Laughrin to put the handgun away. *Id.* at 4. In response, Mr. Laughrin fired two shots from the handgun into the air and proceeded to pull a rifle from a nearby vehicle belonging to a friend. *Id.* Mr. Trujillo continued to reason with Mr. Laughrin to put the weapons away as law enforcement arrived on the scene. *Id.*

Officer Royal Hopper arrived at Diamond Lil's and fired his service weapon at Mr. Laughrin and Mr. Trujillo "six to eight times." (Doc. 1 at 5). After being shot by Officer Hopper, Mr. Laughrin fled to a nearby vehicle. *Id.* Mr. Trujillo remained in the rear parking lot, bleeding as a result of two gunshot wounds to his upper thigh, and waited roughly fifteen minutes for emergency personnel to arrive and administer aid. *Id.* at 5-6. As a result of his injuries, Mr. Trujillo was airlifted to University Medical Center in Lubbock, Texas. *Id.* at 6. Mr. Trujillo has undergone multiple surgeries since the shooting and was unable to return to work for nearly four months as he recovered from his injuries. *Id.*

Mr. Trujillo contends Diamond Lil's is known in the community for its "illustrious criminal history," including sixty-six "serious incidents" between January 1, 2008 and

November 1, 2008. (Doc. 1 at 8). Mr. Trujillo alleges the Hobbs Police Department served "as Diamond Lil's publicly-paid security guards," protecting the establishment even in light of the "repeated creation of danger for its patrons, the community, and [the] officers." *Id.* at 25-26. In addition, Mr. Trujillo argues that despite the Hobbs Police Department's knowledge that Diamond Lil's routinely violated both the Liquor Control Act and state and local laws, the City of Hobbs (the "City") allowed crime to remain unabated and failed to appropriately respond to what had become a "nuisance establishment." *Id.* at 8.

In his Complaint, Mr. Trujillo alleges five causes of action against the City and Officer Hopper. (Doc. 1 at 27-31). First, Mr. Trujillo states two claims against the City: one count of "negligence resulting in battery" under the New Mexico Tort Claims Act ("NMTCA") and one count of 42 U.S.C. § 1983 *Monell* liability under a theory of failure to train and the excessive use of force under the Fourth and Fourteenth Amendments. (Doc. 34 at 1). Next, Mr. Trujillo states three claims against Officer Hopper in his individual capacity: one count of battery under the NMTCA and two counts of deprivation of civil rights under 42 U.S.C. § 1983, alleging violations of the Fourth and Fourteenth Amendments for his use of deadly force and his failure to administer aid. (Doc. 1 at 27-31).

Defendants have now moved to dismiss one of Mr. Trujillo's legal theories supporting his claim for "negligence resulting in battery" under the NMTCA based on the City's alleged violations of the Liquor Control Act, N.M.S.A. Section 60-3A-6.1 (the "Liquor Control Act" or "§ 60-3A-6.1"). (Doc. 32 at 1). The scope of Defendants' Motion to Dismiss is narrow − their three-page motion and four-page reply only seek to

establish that Mr. Trujillo "fails to allege sufficient facts to support a violation of [the Liquor control Act]." (Doc. 32 at 2). Indeed, Defendants have not contested that the City has a general duty to enforce the criminal provisions of the Liquor Control Act, nor do they debate any other element of Mr. Trujillo's negligence claim. (Doc. 46 at 2-3) ("Criminal offenses that are violations of the Act are specifically delineated. Importantly, none of the incidents listed in paragraph 71 of Plaintiff's Complaint are violations of the Liquor Control Act, nor on any of the occasions listed in paragraph 71 did the City or its officers violate [the Liquor Control Act] by failing to notify the [alcohol and gaming commission] within 30 days of issuing a citation for a violation of the Act.") (citations omitted). The Court will therefore only address whether Mr. Trujillo has presented enough factual support to demonstrate the City's plausible failure to enforce the criminal provisions of the Liquor Control Act. The question of whether such failure satisfies the elements of negligence under the NMTCA is not before the Court.

**II.     Legal Standard**

The Federal Rules of Civil Procedure provide that a complaint must contain a "short and plain" statement of: (1) the grounds supporting the court's jurisdiction; (2) the claim showing that the plaintiff is entitled to relief; and (3) a demand for the relief sought. Fed. R. Civ. P. 8(a). A defendant may move the court to dismiss a complaint for, *inter alia*, "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To comply with the pleading requirements of Rule 12(b)(6), a "plaintiff must allege enough factual matter, taken as true, to make his claim to relief … plausible on its face." *Bryson v. Gonzales*, 534 f.3d 1282, 1286 (10th Cir. 2008) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556).

"The complaint does not need detailed factual allegations, but the factual allegations must be enough to raise a right to relief above the speculative level." *Hall v. Witteman*, 584 F.3d 859, 863 (10th Cir. 2009) (citation and internal quotation marks omitted). In addition, the court cannot consider matters outside of the pleading, nor is it required to accept conclusory or unsupported allegations. *Dunn v. White*, 880 F.2d 1188, 1190 (10th Cir. 1989). Moreover, "a formulaic recitation of the elements of a cause of action" will not suffice to state a claim. *Twombly*, 550 U.S. at 555. Finally, "[t]he nature and specificity of the allegations required to state a plausible claim will vary based on context." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (citations omitted).

**III.    Analysis**

Mr. Trujillo's first cause of action against the City, alleging "negligence resulting in battery" under the NMTCA, includes serval theories to support his accusation of negligence. (Doc. 34 at 5). For example, Mr. Trujillo contends the City failed to exercise reasonable care, failed to adequately train and supervise officers, failed to forward liquor control violations, failed to enforce nuisance abatement ordinances and state law, provided an inadequate response to increasing rates of deadly force, and negligently adopted and ratified a culture of violence. (Doc. 1 at 28). Mr. Trujillo contends the City's negligence in each of these instances resulted in a battery, supporting liability under the NMTCA. (Doc. 34 at 5).

The City challenges Mr. Trujillo's argument that it was required by statute to forward alleged violations of the Liquor Control Act to the alcohol and gaming division. (Doc. 32 at 2). Essentially, the City asks the Court to find that Mr. Trujillo may not use its purported failure to forward violations of the Liquor Control Act as the legal basis for establishing the City was negligent under the NMTCA. *Id.* The City's argument is two-fold: not only was it not required to report violations of the Liquor Control Act, but there is also no proof that such violations occurred that would have necessitated reporting. (Doc. 46 at 3). Central to this argument is the language of the Liquor Control Act, which states, in pertinent part:

> Within thirty days following the date of issuance of a citation pursuant to the provisions of the Liquor Control Act, the department of public safety or the law enforcement agency of a municipality or county shall report alleged violations of that act to the alcohol and gaming division of the regulation and licensing department.

§ 60-3A-6.1(A). The City contends officers never "issued a citation" and it therefore had no duty to report alleged violations of the Liquor Control Act to the alcohol and gaming division. (Doc. 32 at 1).

In response, Mr. Trujillo argues the City's negligent failure to issue citations pursuant to the Liquor Control Act, in the face of knowing and repeated violations, is the very conduct that a jury could conclude a reasonably prudent law enforcement officer should have undertaken. (Doc. 34 at 4). Specifically, Mr. Trujillo argues that part of law enforcement's duty to enforce all violations of the criminal code includes the "duty to investigate and enforce the criminal provisions of the Liquor Control Act." *Id.* The City's failure to enforce the Liquor Control Act, Mr. Trujillo contends, was a negligent omission that resulted in his injury. *Id.* at 4-5.

6

Mr. Trujillo cites two criminal provisions of the Liquor Control Act which he contends the City knew Diamond Lil's repeatedly violated but failed to enforce: serving liquor to knowingly intoxicated persons and creating a public nuisance. *See* (Doc. 34 at 4) (citing § 60-7A-15 and -16); *see also* (Doc. 46 at 2) (citing § 60-7B-1, serving alcohol to a minor). The City responds to these specific accusations by explaining that while its officers responded to an abundance of complaints involving criminal activity on or near Diamond Lil's property, none of those incidents gave rise to violations of the Liquor Control Act requiring the issuance of a citation or further reporting. (Doc. 46 at 3).

It is a violation of the Liquor Control Act, and its provision against selling alcoholic beverages to knowingly intoxicated persons, § 60-7A-16:

> for a person to sell or serve alcoholic beverages to or to procure or aid in the procurement of alcoholic beverages for an intoxicated person if the person selling, serving, procuring or aiding in procurement, knows or has reason to know that he is selling, serving, procuring or aiding in procurement of alcoholic beverages for a person that is intoxicated.

Mr. Trujillo has cited a myriad of incidents in his Complaint that demonstrate a plausible violation of § 60-7A-16 for which he argues the City should have issued citations or further investigated the need to issue citations. For example, Mr. Trujillo cites police reports detailing the following activity at Diamond Lil's: a female patron intoxicated and placed in detox at the Hobbs City Jail, (Doc. 1 at 14); a female patron being ordered by police to leave the bar because "she was too intoxicated," *id.* at 15; at least five instances involving men being "so intoxicated" or unable "to take care of [themselves]" that they were placed in "protective custody" and brought to detox at Hobbs City Jail, *id.* at 18, 21, 24; an individual who was discovered unconscious and required

hospitalization for possible alcohol poisoning, *id.* at 20; a vehicle accident in the parking lot where the driver admitted to drinking "multiple beers at Diamond Lil's" before getting in his car, *id.* at 23; an arrest for a DWI in the parking lot, *id.*; and a report involving an intoxicated patron who admitted to "drinking numerous mixed beverages at Diamond Lil's, including shots," *id.* at 20.

In addition, Mr. Trujillo cites three police reports that involve underage patrons drinking inside Diamond Lil's or using false identification, in contravention of § 60-7B-1(A), which states, in pertinent part:

> It is a violation of the Liquor Control Act for a person, including a person licensed pursuant to the provisions of the Liquor Control Act, or an employee, agent or lessee of that person, if the person knows or has reason to know that the person is violating the provisions of this section, to:
>
> 1. sell, serve or give alcoholic beverages to a minor or permit a minor to consume alcoholic beverages on the licensed premises;

Specifically, Mr. Trujillo cites police reports detailing: an underage person being identified by police inside the bar using false identification, (Doc. 1 at 11); no security personnel stationed at the front door and "one of the females [inside the bar] [] using someone else's identification," *id.;* and one man who "used" and was in possession of "a couple of false identification cards," *id.* at 16.

Defendants contend Mr. Trujillo "does not cite a single instance in which Officers investigated and cited Diamond Lil's for a violation of the Act and then failed to report it to the [alcohol and gaming commission]." (Doc. 46 at 3). In addition, Defendants allege Mr. Trujillo "has merely claimed that incidents […] should have been forwarded to the [alcohol and gaming division] [] despite the fact that these activities, while criminal in

nature, are not violations of the act." *Id.* To the contrary, the Court finds the above listed incidents present sufficient evidence to allege, on a level which satisfies the Rule 12(b)(6) pleading standard, that the City may have known Diamond Lil's was serving intoxicated or underage patrons and despite this knowledge, negligently ignored or deliberately refused to issue citations in accordance with the Liquor Control Act. *See Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 556) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). Indeed, a reasonably prudent law enforcement officer may have issued citations for the conduct described above and would have then forwarded those citations to the alcohol and gaming division.

The Court is not suggesting, however, that the City's potential failure to enforce the Liquor Control Act amounts to a theory of negligence *per se* or provides a private cause of action stemming from § 60-3A-6.1. *See* (Doc. 34 at 3). Rather, the only issue briefed by the parties, and the scope of the Court's holding, is limited to finding that Mr. Trujillo has adequately pled enough facts to demonstrate the City's plausible breach of its duty to enforce the Liquor Control Act. *See* (Doc. 1 at 28). Essentially, the Court refuses to find that Mr. Trujillo "should not be permitted to use the incidents [listed in] his Complaint as support for his allegations that the City was negligent or deprived him of any rights guaranteed under the Constitution." (Doc. 46 at 4).

### IV.     Recommended Disposition

In light of the foregoing, the Court **RECOMMENDS** *Defendant City of Hobbs' Motion to Dismiss Plaintiff's Claims That it Violated NMSA 1978, Section 60-3A-6.1,*

(Doc. 32), be **DENIED**.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
THE HONORABLE CARMEN E. GARZA
CHIEF UNITED STATES MAGISTRATE JUDGE