# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

NATHANIEL TRUJILLO,

    Plaintiff,

v.                                                         No. CV 17-53 JTM/CG

CITY OF HOBBS, et al.,

    Defendants.

## **PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

**THIS MATTER** is before the Court on Defendants City of Hobbs and Royal Hopper's *Motion for Summary Judgment and Memorandum in Support* (the "Motion"), (Doc. 35), filed August 16, 2017; Plaintiff Nathaniel Trujillo's *Response to Defendants' Motion for Summary Judgment and Memorandum in Support* (the "Response"), (Doc. 67), filed February 1, 2019; and *Defendants' Reply in Support of Motion for Summary Judgment* (the "Reply"), (Doc. 74), filed March 7, 2019.

On August 5, 2019, United States District Judge J. Thomas Marten referred this matter to the undersigned to make findings of fact, conduct legal analysis, and recommend an ultimate disposition. (Doc. 79). After considering the parties' filings, the record, and the relevant law, the Court **RECOMMENDS** that *Defendants' Motion for Summary Judgment and Memorandum in Support*, (Doc. 35), be **DENIED**.

    **I.**     **Background**

On January 16, 2015, Defendant Royal Hopper was working as a patrol officer for the City of Hobbs Police Department. (Doc. 35 at 2). In the early hours of January 17, 2015, he received a call on his radio indicating that a fight was in progress at Diamond Lil's, a local bar in Hobbs, New Mexico. *Id.* Officer Hopper arrived at Diamond

Lil's in his patrol vehicle without activating his lights or sirens. *Id.* As he approached, Officer Hopper saw a "crowd of people on the side of the bar." *Id.* Officer Hopper pulled into the area where the crowd was located, and witnessed people starting to walk away. *Id.* Upon entering the parking lot, Officer Hopper believed the fight that resulted in his initial dispatch to the scene was over. *Id.*

Officer Hopper exited his patrol vehicle to ensure the scene was secure and no fighting continued. (Doc. 35 at 3). Officer Hopper was in full uniform, with his badge and duty weapon. *Id.* at 4. As he walked to the back parking lot to assess the scene, Officer Hopper did not use his flashlight because "he did not want people to see him from afar." (Doc. 74 at 10). After viewing at least one individual with a rifle and yelling something akin to "Freeze, HPD," Officer Hopper fired his duty weapon "six to eight times." (Doc. 67 at 14). Plaintiff Nathaniel Trujillo was shot twice in the upper thigh and Kyle Laughrin was shot once. (Doc. 1 at 5). Mr. Trujillo was severely injured as a result of the gunshot wounds and was later airlifted to University Medical Center in Lubbock, Texas, for emergency medical treatment. *Id.* at 6.

In his Complaint, Mr. Trujillo alleges five causes of action against the City of Hobbs (the "City") and Officer Hopper. (Doc. 1 at 27-31). Defendants now seek summary judgment on the basis of qualified immunity on each of Mr. Trujillo's five claims. (Doc. 35 at 1). In response to Defendants' Motion, Mr. Trujillo has abandoned one of his claims − a 42 U.S.C. § 1983 action alleging Officer Hopper violated his Fourteenth Amendment right to receive medical aid after being shot. (Doc. 67 at 2, n. 1). Thus, what remains before the Court are: two claims against Officer Hopper in his individual capacity, including one count of battery under the New Mexico Tort Claims

Act ("NMTCA") and one Fourth Amendment claim for the use of excessive force under 42 U.S.C. § 1983 ("Section 1983"); and two claims against the City, including one count of "negligence resulting in battery" under the NMTCA and one count of Section 1983 *Monell* liability under a theory of failure to train and the excessive use of force under the Fourth and Fourteenth Amendments. (Doc. 1 at 27-32).

In their Motion, Defendants have divided the "undisputed material facts" of this case into four subsections, each section detailing a different actor's or witness's "recollection of events" from the early morning hours of January 17, 2015. (Doc. 35 at 2) ("Officer Hopper's Recollection of Events"); *id.* at 5 ("Events described by Kyle Laughrin"); *id.* at 6 ("Adam McGranahan's Recollection of Events"); *id.* at 8 ("Plaintiff's Recollection of Events"). Defendants then argue that under each of the factual recitations provided, it remains undisputed that: (1) Officer Hopper announced his presence; and (2) the gun pointed in his direction was not lowered when Officer Hopper issued his commands. *Id.* at 16-17. Essentially, Defendants argue, based on these two undisputed facts alone, the Court should conclude that Officer Hopper's decision to shoot Mr. Trujillo was reasonable and he is therefore entitled to qualified immunity as a matter of law. *Id.*

## II.    Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it could have an effect on the outcome of the lawsuit. *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 538 (10th Cir. 2014) (citation omitted). A dispute over a material fact is "genuine" if the evidence presented

3

could allow a rational jury to find in favor of the non-moving party. *E.E.O.C. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000) (internal citation omitted). "Genuine factual issues must exist that 'can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Harapat v. Vigil*, 676 F. Supp. 2d 1250, 1258-59 (D.N.M. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)).

In considering a summary judgment motion, the court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in his or her favor. *Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007). A party seeking summary judgment bears the initial burden of showing there is no genuine dispute as to any material fact. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998). When the movant does not have the burden of persuasion at trial, it can satisfy its burden at the summary judgment stage by identifying a lack of evidence on an essential element of the claim. *Id.* at 671. If the party seeking summary judgment satisfies its burden, the burden then shifts to the non-movant. *Id.*

The non-movant cannot rest on the pleadings but must "designate specific facts so as to make a showing sufficient to establish the existence of an element essential to that party's case in order to survive summary judgment." *Sealock v. Colo.*, 218 F.3d 1205, 1209 (10th Cir. 2000) (citation omitted). Specifically, the non-movant must identify facts from which a rational trier of fact could find in the non-movant's favor, utilizing evidence such as affidavits, deposition transcripts, or incorporated exhibits. *Adler*, 144 F.3d at 671. The party cannot rest on ignorance of the facts, speculation, or

unsubstantiated conclusory allegations. *Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1129 (10th Cir. 2003).

"The mere existence of a scintilla of evidence will not avoid summary judgment." *Harapat*, 676 F. Supp. 2d at 1259 (citing *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1539 (10th Cir. 1993)). If the evidence in favor of the nonmovant "is merely colorable . . . or is not significantly probative, . . . summary judgment may be granted." *Id.* (quoting *Anderson*, 477 U.S. at 249). "A fact is 'disputed' in a summary-judgment proceeding only if there is contrary evidence or other sufficient reason to disbelieve it; a simple denial, much less an assertion of ignorance, does not suffice." *Grynberg v. Total S.A.*, 538 F.3d 1336, 1345 (10th Cir. 2008) (citing Fed. R. Civ. P. 56(e)).

### III. Analysis

Defendants first argue that even under Mr. Trujillo's theory that "he was an innocent bystander who was mistakenly shot while standing next to Mr. Laughrin," Officer Hopper is not subject to liability under Section 1983. (Doc. 35 at 17). In addition, Defendants argue Officer Hopper is entitled to qualified immunity on Mr. Trujillo's state law battery claim because he acted in good faith and used only the force reasonably necessary under the circumstances. *Id.* at 17-18. Thus, Defendants conclude, because no liability can be attributed to Officer Hopper in his personal capacity, no derivative liability may be imputed to the City of Hobbs. *Id.* at 19.

#### a. Claims Against Officer Royal Hopper in his Personal Capacity

A claim against an officer in his personal capacity seeks to impose liability on the officer himself, not the department where he works. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). To establish a claim against a government officer in his personal capacity, the

plaintiff must demonstrate that the officer caused the deprivation of a federal statutory or constitutional right while acting under color of state law. *Id.* Unlike government officers who are sued in their official capacity, officers sued in their personal capacity "come to court as individuals." *Id.* at 27. In describing the scope of personal-capacity claims, the United States Supreme Court has underscored Congress' intent to provide "a remedy to parties deprived of constitutional rights, privileges, and immunities by an official's abuse of his position." *Monroe v. Pape*, 365 U.S. 167, 172 (1961) (rev'd on other grounds).

Under Section 1983, state officials sued in their personal capacity for damages may raise the affirmative defense of qualified immunity. *A.M. v. Holmes*, 830 F.3d 1123, 1134 (10th Cir. 2016). Once a defendant asserts qualified immunity, the plaintiff bears the burden of demonstrating that both (1) the official violated a federal constitutional or statutory right; and (2) the right violated was clearly established at the time of the official's conduct. *Id.* The Tenth Circuit Court of Appeals has described this test as a "heavy two-part burden," established to protect "all but the plainly incompetent or those who knowingly violate the law." *Id.* at 1134-35 (internal citations and quotations omitted).

A decision to afford an officer qualified immunity is almost always a question of law, to be decided by the court prior to trial. *Keylon v. City of Albuquerque*, 535 F.3d 1210, 1217-18 (10th Cir. 2008). The protection afforded by qualified immunity applies to government officials whether their mistake is one of law or fact – or a mixed question of law and fact. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). A court has discretion to address the requirements of a qualified immunity defense in any order. *Id.* at 236. The plaintiff's failure to establish either of the two requirements is fatal to his claim. *Id.*

In determining whether the plaintiff has satisfied the two-pronged qualified-immunity showing, the court ordinarily accepts the plaintiff's version of the facts. *See Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009). However, because the summary judgment stage is "beyond the pleading phase of the litigation, a plaintiff's version of the facts must find support in the record." *Thomson v. Salt Lake Cty.*, 584 F.3d 1304, 1312 (10th Cir. 2009). "As with any motion for summary judgment, '[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts.'" *York v. City of Las Cruces*, 523 F.3d 1205, 1210 (10th Cir. 2008) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). However, if the non-movant proves there is a factual dispute involving an issue "on which qualified immunity turns," summary judgment on the basis of qualified immunity is "inappropriate." *Harapat*, 676 F. Supp. 2d at 1266 (citing *Poe v. Haydon*, 853 F.2d 418, 426 (6th Cir. 1988)).

### i. Section 1983 Excessive Use of Force Claim

Defendants first contend no issues of material fact remain that prevent the Court from granting Officer Hopper's qualified immunity defense on Mr. Trujillo's Section 1983 claim. Specifically, Defendants argue it is undisputed that Mr. Trujillo heard Officer Hopper announce himself before firing his weapon and, even after that announcement, the rifle allegedly aimed at Officer Hopper was not lowered or released. (Doc. 35 at 16-17). These facts, Defendants allege, make Officer Hopper's decision to shoot reasonable and shield him from liability under the Fourth Amendment. *Id.* Mr. Trujillo, however, argues that whether he was a threat to Officer Hopper, thus justifying the shooting, is "very much in dispute." (Doc. 67 at 24). Mr. Trujillo claims the facts illustrate

Officer Hopper intentionally used deadly force against him, even though he was unarmed and submitted to Officer Hopper's commands. *Id.* at 25.

### 1. Legal Standard

"When an officer moves for qualified immunity on an excessive force claim, 'a plaintiff is required to show that the force used was impermissible (a constitutional violation) and that objectively reasonable officers could not have thought the force constitutionally permissible (violates clearly established law).'" *Harapat*, 676 F. Supp. 2d at 1264 (quoting *Cortez v. McCauley*, 478 F.3d 1108, 1128 (10th Cir. 2007)). The court must analyze a Fourth Amendment excessive force claim under an objective "reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 397 (1989) ("[T]he question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.").

In making this determination, the court must consider the "totality of the circumstances," including: (1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of the officers or others; and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight. *Id.* (citing *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985)). In respecting the difficulty of law enforcement's need to make split-second decisions, the court must evaluate the reasonableness of the officer's use of force from the "on-scene perspective," not with the benefit of 20/20 hindsight. *Saucier v. Katz,* 533 U.S. 194, 205 (2001).

### 2. Analysis

In the early hours of January 17, 2015, Kyle Laughrin consumed ten drinks inside

Diamond Lil's over the course of approximately one hour and thirty minutes. (Doc. 1 at 3). When it was time to leave, Mr. Laughrin walked to the back parking lot of Diamond Lil's and began waving and pointing a handgun in the direction of Mr. Trujillo. *Id.* After attempting to reason with Mr. Laughrin to put the gun away, Mr. Trujillo claims Mr. Laughrin fired two bullets from the handgun into the air. *Id.* at 4. Mr. Laughrin then walked to a friend's vehicle, opened the door, and pulled out a rifle. *Id.* Moments later, Officer Hopper arrived on the scene. *Id.* at 4. The parties dispute what happened next.

Officer Hopper alleges he approached Diamond Lil's, heard shots being fired, and "he could see muzzle flashes going off" − a sign of live rounds being fired from a long gun. (Doc. 35 at 3). Officer Hopper recalls that he saw Mr. Trujillo and Mr. Laughrin jointly holding the rifle and shouted loudly twice, "drop your weapon." *Id.* at 4. As he saw the "barrel of the [rifle] come up rising at him," he "started shooting," allegedly aiming his fire "for the rifle." *Id.* After shooting both Mr. Trujillo and Mr. Laughrin, Officer Hopper radioed for emergency medical assistance. *Id.* at 5. Mr. Laughrin fled to a nearby vehicle and Mr. Trujillo remained in the parking lot bleeding as a result of his injuries. *Id.*; *see also* (Doc. 67 at 18).

Mr. Trujillo recalls the events differently. He contends Officer Hopper arrived in the dimly lit parking lot and gave a single verbal warning announcing his presence that was "near simultaneous" to the moment he began shooting. (Doc. 1 at 5). When Officer Hopper issued his verbal warning, Mr. Trujillo claims he raised his arms and began walking backwards. (Doc. 67 at 11). Mr. Trujillo also contends that he played no role in "holding the rifle," and was "ten to fifteen feet away" from Mr. Laughrin when he was shot. *Id.* By Mr. Trujillo's account, he complied with Officer Hopper's commands and

9

was shot anyway.

Mr. Trujillo further argues Officer Hopper could not have seen "muzzle flashes going off" or heard gunshots being fired when he arrived at Diamond Lil's because Mr. Laughrin never fired the rifle. (Doc. 67 at 6) ("Agent Newman has confirmed that Hopper was simply wrong when he said that he saw 'a muzzle flash from a long gun.'"); *see also id.* ("[S]tate police exhaustively searched the Diamond Lil's parking lot and could only find casings for Laughrin's pistol, not his rifle"). Mr. Trujillo contends, with police logs and records in support, that when Mr. Laughrin fired his pistol, four or five minutes elapsed before Officer Hopper arrived on the scene. (Doc. 67 at 19). However, Officer Hopper claims he "shot his weapon within three to five seconds" of hearing the opposing gunfire. *Id.* at 8. Under Officer Hopper's version of events, Mr. Laughrin would have had to fire his pistol, run to a nearby car, pull out a rifle, and begin to raise it toward Officer Hopper within "three to five seconds." *See* (Doc. 67 at 6).

Mr. Trujillo also contests Officer Hopper's allegation that he aimed his duty weapon at the rifle when he fired. Mr. Trujillo contends Officer Hopper is a "trained marksman," a man who is trained to hit where he aims. (Doc. 67 at 15) (Officer Hopper stated, "I mean that's the whole purpose of us going to the range and shooting a lot, so where we shoot at is where we hit."). According to Mr. Trujillo, the logical nexus must therefore be that Officer Hopper intentionally shot him while he was standing ten to fifteen feet away from Mr. Laughrin with his arms raised. *Id.* ("Hopper did not shoot the rifle. Had he targeted the rifle, he would not have struck [Mr.] Trujillo.").

Mr. Trujillo's factual contentions are not without support in the record. Indeed, Mr. Trujillo cites police interviews of witnesses Jacob McPherson, Lana Trowler, Christa

Hutchcraft, and Nathan Medellin. (Doc. 67 at 7); *see Adler*, 144 F.3d at 671 ("The non-movant must… identify[] facts in affidavits, deposition transcripts, or incorporated exhibits."). In addition, Mr. Trujillo cites five different statements given by Officer Hopper: a recorded interview with the Department of Public Safety conducted by Investigator Charles Newman, an interview with the Hobbs Police Department conducted by Lieutenant Cunnigham, a pre-trial interview in the criminal case against Mr. Laughrin, testimony at Mr. Laughrin's criminal trial, and his deposition in this civil action. (Doc. 67 at 3, 7-8). Mr. Trujillo also presents his own deposition transcripts, (Doc. 67-4 at 1-9), testimony from Mr. Laughrin, (Doc. 67-5 at 1-7), the transcripts from the depositions of Officer Kevin Massis and Agent Newman with the New Mexico State Police, (Doc. 67-7 at 1-3), (Doc. 67-8 at 1-7), and the affidavit of witness Adam McGranahan, (Doc. 67-13 at 1-3).

The Court cannot accept Defendants' argument that because an assault rifle was allegedly pointed in the direction of Officer Hopper, he should be granted qualified immunity for firing his weapon. While in a vacuum this fact is persuasive, the facts here do not support such a broad conclusion. Indeed, "the totality of the circumstances" is "the touchstone of the reasonableness inquiry" and "strict reliance on the 'precise moment'" Officer Hopper fired his weapon "is inappropriate when the totality must be considered." *See Thomson v. Salt Lake Cty.*, 584 F.3d 1304, 1313 (10th Cir. 2009) ("We assess objective reasonableness based on whether the totality of the circumstances justified the use of force, and pay careful attention to the facts and circumstances of the particular case."); s*ee also Phillips v. James*, 422 F.3d 1075, 1083 (10th Cir. 2005). The Tenth Circuit has plainly rejected this argument, explaining that

"although the precise moment before [the officer] shot is a critical factor, the events leading up to that moment are also extremely relevant." *Phillips*, 422 F.3d at 1083.

The Court also finds Defendants' argument is inconsistent with the Tenth Circuit's opinion in *Estate of Larsen, ex rel. v. Murr*, 511 F.3d 1255 (10th Cir. 2008). In *Estate of Larsen*, Chief Judge Tymkovich explained that in determining whether a police officer's use of force was reasonable, the court should consider a number of "non-exclusive" factors, such as: (1) whether the officers ordered the suspect to drop his weapon, and the suspect's compliance with police commands; (2) whether any hostile motions were made with the weapon towards the officers; (3) the distance separating the officers and the suspect; and (4) the manifest intentions of the suspect. *Estate of Larsen*, 511 F.3d at 1260. Here, the parties genuinely dispute the first three factors. Indeed, the parties disagree on the timing and substance of Officer Hopper's verbal command, (Doc. 67 at 14), (Doc. 74 at 5); whether Mr. Trujillo complied with Officer Hopper's commands before he was shot, (Doc. 67 at 11), (Doc. 74 at 6); whether Mr. Trujillo had his hands on the weapon, (Doc. 67 at 11), (Doc. 74 at 6); whether Officer Hopper heard or saw gunshots before firing his weapon, (Doc. 67 at 5-9), (Doc. 74 at 3-4); and how far Mr. Trujillo stood from both Officer Hopper and the suspect with a rifle, (Doc. 67 at 11), (Doc. 74 at 9-10). Given these factual discrepancies, the Court is unable to determine whether Officer Hopper's actions were objectively reasonable under the circumstances. *See Graham*, 490 U.S. at 397 (similarly explaining that the Fourth Amendment calculus turns on "the severity of the crime at issue," "whether the suspect posed an immediate threat to the safety of the officers or others," and "whether he was actively resisting arrest or attempting to evade arrest by flight.").

Finally, Defendants urge the Court to believe Officer Hopper's testimony over that provided by Mr. Trujillo, Mr. Laughrin, and Mr. McGranahan. (Doc. 74 at 3-4). Defendants argue that Mr. Trujillo and Mr. Laughrin were "intoxicated at the time of the incident," and Mr. Trujillo "fails to set forth actual, competent summary judgment evidence." *Id.* at 3. The Court will not weigh the credibility of witness testimony nor will it otherwise evaluate competing evidence. *See Norton v. The City of Marietta, Oklahoma*, 432 F.3d 1145, 1154 (10th Cir. 2005) (explaining that "[g]iven the dearth of evidence in the record, the district court could not have reached these conclusions unless it chose to believe defendants over plaintiff," and "the district court's grant of summary judgment" was therefore improper); *see also Seamons v. Snow*, 206 F.3d 1021, 1027 (10th Cir. 2000) ("Given the conflicting testimony [] contained in the depositions, we fail to see how the district court could reach these conclusions without resolving factual disputes - something it cannot do at this stage of the proceedings."). Indeed, "[i]t is axiomatic that a judge may not evaluate the credibility of witnesses in deciding a motion for summary judgment." *Seamons*, 206 F.3d at 1026. The Court therefore recommends that resolution of these factual and credibility-related issues be left for a jury. *See Harapat*, 676 F.Supp. 2d at 1258-59 ("Genuine factual issues must exist that can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.") (internal quotations omitted).

In sum, Mr. Trujillo has demonstrated genuine disputes over material facts that prevent the Court from concluding whether Officer Hopper violated his Fourth Amendment rights. *See Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002) ("In the end, [] the defendant still bears the normal summary judgment burden of

13

showing that no material facts remain in dispute that would defeat the qualified immunity defense. When the record shows an unresolved dispute of historical fact relevant to this immunity analysis, a motion for summary judgment based on qualified immunity should be properly denied.") (internal quotations and citations omitted). The Court finds an answer to these factual questions is necessary to determine whether the first prong of the qualified immunity analysis is met − whether Officer Hopper violated Mr. Trujillo's Fourth Amendment right to be free from excessive force. Consequently, the Court **RECOMMENDS** that Defendants' request for summary judgment on this issue be **DENIED**.

### ii. Battery under the New Mexico Tort Claims Act

Next, Defendants argue Officer Hopper is entitled to summary judgment on Mr. Trujillo's state law battery claim "for the same reasons" that he is entitled to qualified immunity on the Section 1983 claim. (Doc. 35 at 17-18). Defendants only provide one paragraph detailing this argument, which states in its entirety:

> Plaintiff alleges Officer Hopper committed a battery against Plaintiff. *See Plaintiff's Complaint, Count II.* A police officer will not be liable for assault or battery so long as he acted in good faith and only used the force reasonably necessary under the circumstances. *See Jonas v. Bd. of Comm'rs of Luna Cty.*, 699 F.Supp.2d 1284, 1297 (D.N.M. 2010) (citing *State v. Gonzales*, 642 P.2d 210, 213 (N.M. Ct. App. 1982)[)]. For the same reasons that Plaintiff's excessive force claims fail against Officer Hopper, so must Plaintiff's battery claims. Accordingly, Officer Hopper is entitled to summary judgment on all of Plaintiff's state law claims.

*Id.* In determining whether a police officer is liable for battery for his use of force in facilitating an arrest, courts apply a similar "objective reasonableness test" as that utilized under the Fourth Amendment. *See Alaniz v. Funk*, 364 P.2d 1033, 1035 (N.M. 1961). Here, the Court has concluded that genuine disputes over Mr. Trujillo's distance

14

from the rifle, whether Officer Hopper heard gunshots before firing his weapon, and the timing and nature of Officer Hopper's warning before firing his weapon, preclude a determination of whether Officer Hopper's conduct was reasonable under the Fourth Amendment. Absent any additional argument from the parties, the Court concludes the same material disputed facts render summary judgment on the reasonableness of Officer Hopper's conduct for purposes of Mr. Trujillo's state law battery claim improper. For these reasons, the Court **RECOMMENDS** that Defendants' request for summary judgment on this issue be **DENIED**.

### b. Derivative Liability Claims Against the City of Hobbs

Finally, Defendants argue, because no liability can be attributed to Officer Hopper's conduct, Mr. Trujillo cannot sustain his vicarious liability claims against the City of Hobbs. (Doc. 35 at 19). Defendants provide only three sentences in support of this argument:

> Plaintiff's claims against the City of Hobbs (vicarious liability and municipality liability) are all derivative in nature. In other words, to establish liability against the City of Hobbs, Plaintiff must first establish that Officer Hopper is liable. As previously established, Plaintiff cannot do so. Accordingly, all claims against the City of Hobbs should be dismissed.

*Id.* The success of Defendants' argument hinges on the Court granting their motion for summary judgment on Mr. Trujillo's individual capacity claims against Officer Hopper. *See id.* The Court will not craft an argument on Defendants' behalf to address the remaining claims against the City. Thus, because the Court recommends that Defendants' Motion be denied as to the individual capacity claims against Officer Hopper, it follows that the Court **RECOMMENDS** that Defendants' request for summary judgment on this issue also be **DENIED**.

## IV. Conclusion

Consistent with the foregoing, the Court **RECOMMENDS** that *Defendants' Motion for Summary Judgment and Memorandum in Support*, (Doc. 35), be **DENIED**.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
THE HONORABLE CARMEN E. GARZA
CHIEF UNITED STATES MAGISTRATE JUDGE