IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

NATHANIEL TRUJILLO,
    Plaintiff,

v.                                                 No. CV 17-53 JTM/CG

CITY OF HOBBS, *et al.*,
    Defendants.

ORDER ADOPTING CHIEF MAGISTRATE JUDGE'S
PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER is before the Court on Chief Magistrate Judge Carmen E. Garza's Proposed Findings and Recommended Disposition (Doc. 81), Defendants' Objections to the same (Doc. 82), and Plaintiff's Response to Defendants' Objections (Doc. 84).

In the Proposed Findings, the Chief Magistrate Judge recommended that Defendants' Motion for Summary Judgment and Memorandum in Support (Doc. 35) be denied. (Doc. 81 at 15). Defendants timely objected to the Proposed Fndings and Plaintiff timely responded to Defendants' objections. *See* Fed. R. Civ. P. 72(B)(2). Following a *de novo* review of Defendants' Motion for Summary Judgment, the Proposed Findings, Defendants' Objections, and Plaintiff's Response, the Court will overrule the Objections, adopt the Proposed Findings and Rcommendations, and deny Defendants' Motion for Summary Judgment.

# 1. Background

In the early morning of January 17, 2015, Officer Royal Hopper with the Hobbs Police Department was dispatched to a bar in Hobbs, New Mexico. (Doc. 82 at 1); (Doc. 84 at 2). The parties dispute what happened after Officer Hopper arrived on the scene, including what Officer Hopper announced before he fired his duty weapon at Plaintiff Nathaniel Trujillo, whether Trujillo had his hands on the weapon and how far he stood from the suspect brandishing the firearm, and whether Trujillo complied with Officer Hopper's verbal commands. (Doc. 82 at 6). It is undisputed, however, that Officer Hopper arrived on the scene without deploying his patrol vehicle's lights or sirens, approached Trujillo and the suspect with the firearm without the use of a flashlight, uttered an announcement, and fired his duty weapon "four or five" times, hitting Trujillo twice in the upper thigh. (Doc. 82 at 5); (Doc. 84 at 2); (Doc. 67 at 16); (Doc. 1 at 6).

At this stage in litigation, Trujillo has four remaining claims arising from Officer Hopper's January 17, 2015, use of force: two claims under 42 U.S.C. § 1983 against Officer Hopper and the City of Hobbs, and two claims under the New Mexico Tort Claims Act (NMTCA) for battery against both Defendants. (Doc. 1 at 27-32). In their Motion for Summary Judgment, Defendants argue Officer Hopper is entitled to qualified immunity on both Trujillo's claims for battery under the NMTCA and excessive force under Section 1983. (Doc. 35 at 13-18). In addition, Defendants contend that because no claim can be established against Officer Hopper in his individual capacity, no liability can be imputed to the City of Hobbs under either the NMTCA or Section 1983. *Id.* at 19.

In the Proposed Findings, the Chief Magistrate Judge recommended that

summary judgment be denied on both Trujillo's Section 1983 and NMTCA claims because several issues of material fact remain disputed. (Doc. 81 at 12, 14). In addition, the Chief Magistrate Judge recommended that because issues of fact remain as to the reasonableness of Officer Hopper's conduct, the derivative-liability claims against the City of Hobbs should remain viable. *Id.* at 15. The Chief Magistrate Judge therefore recommended that Defendants' Motion for Summary Judgment be denied on the merits. *Id.* at 16.

Defendants have objected to the Chief Magistrate Judge's Proposed Findings on two grounds. First, Defendants contend the Chief Magistrate Judge committed legal error when she determined "there is a clearly established right that police officers are not entitled to defend themselves from the threat of a firearm pointed at them." (Doc. 82 at 3); *id.* at 5 ("The [Chief] Magistrate Judge's decision that persons pointing a firearm and persons in their vicinity have a clearly established right for the officer not to defend himself is in error."). Second, Defendants argue no material facts remain genuinely disputed which preclude a finding of qualified immunity for Officer Hopper. *Id.* at 5-13. As a result, Defendants contend the derivative-liability claims against the City of Hobbs must also be dismissed at the summary judgment stage. *Id.* at 13-14.

In response, Trujillo contends Defendants frame the "clearly-established prong of the qualified immunity standard" using "self-serving" evidence and testimony provided by Officer Hopper, ignoring the legal mandate that the evidence be viewed in the light most favorable to the non-movant. (Doc. 84 at 7-8) (citing *Tolan v. Cotton*, 572 U.S. 650, 657-60 (2014); *Pauly v. White*, 874 F.3d 1197, 1218 (10th Cir. 2017)). In addition, Trujillo

3

alleges the facts Officer Hopper boasts as "immaterial" are those which inform the difference "between a potentially justified shooting and a clearly established violation of the *Garner* rule." (Doc. 84 at 6). In conclusion, Trujillo argues Officer Hopper is not entitled to qualified immunity because "there are varying accounts of what happened from different witnesses, including wildly inconsistent accounts from Hopper himself." *Id.* at 15.

## 2. Legal Standard

When resolving objections to a magistrate judge's recommendation, the district judge must make a *de novo* determination regarding any part of the recommendation to which a party has properly objected. 28 U.S.C. § 636(b)(1)(C). Filing objections that address the primary issues in the case "advances the interests that underlie the Magistrate's Act, including judicial efficiency." *United States v. One Parcel of Real Prop., With Bldgs., Appurtenances, Improvements, & Contents*, 73 F.3d 1057, 1059 (10th Cir. 1996). Objections must be timely and specific to preserve an issue for *de novo* review by the district court or for appellate review. *Id.* at 1060. Additionally, issues "raised for the first time in objections to the magistrate judge's recommendation are deemed waived." *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996); *see also United States v. Garfinkle*, 261 F.3d 1030, 1031 (10th Cir. 2001).

## 3. Analysis

When a government defendant acting under color of state law raises the defense of qualified immunity in a summary judgment proceeding, the burden shifts to the plaintiff to prove that (1) a reasonable jury could find facts supporting a violation of a constitutional right, and the right (2) was clearly established at the time of the defendant's conduct. *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014). The Court has discretion to decide which of the two prongs of the qualified immunity test to address first. *Id*. at 412. Once the plaintiff has met their initial burden of proof, the defendant must then demonstrate that "no material issues of fact remain as to whether his . . . actions were objectively reasonable in light of the law and the information he . . . possessed at the time." *Zuchel v. Spinharney*, 890 F.2d 273, 274 (10th Cir. 1989). If the defendant can demonstrate that his actions were objectively reasonable under the circumstances, only then is he entitled to summary judgment based on qualified immunity. *Id.*

Here, Defendants first contend the Chief Magistrate Judge erred in analyzing the second prong of the qualified immunity analysis, that "there is a clearly established right that police officers are not entitled to defend themselves from the threat of a firearm pointed at them." (Doc. 82 at 3). Defendants' formulation of the right, and the evidentiary prism in which they frame it, relies on their recitation of the facts and the "persuasive picture" they have painted to justify Officer Hopper's use of force. *See Zuchel*, 890 F.2d at 275. However, as the nonmovant, the evidence must be viewed in the light most favorable to Trujillo. *See Walker v. City of Orem*, 451 F.3d 1139, 1155 (10th Cir. 2006) (explaining the

court must "examine the facts presented on summary judgment in the light most favorable to the plaintiff, to determine whether they amount to a violation of a clearly-established right").

In viewing the evidence in the light most favorable to Trujillo − and disregarding Defendants' "rather one-sided factual summary" − the record tells a different story of what occurred in the early morning hours of January 17, 2015. *See Zuchel*, 890 F.2d at 275. Indeed, Trujillo alleges Officer Hopper arrived in the dimly lit parking lot of a local bar in Hobbs, New Mexico, and "gave a single verbal warning announcing his presence that was near simultaneous to the moment he began shooting." (Doc. 81 at 9) (quoting Doc. 1 at 5). At least one eye-witness estimates that Trujillo was standing "ten to fifteen feet away" from the suspect brandishing the firearm and had his arms raised above his head when he was shot twice in the upper thigh. (Doc. 81 at 9-10); (Doc. 67 at 25). From Trujillo's account, he was on the scene trying to persuade the individual with the firearm to "put the gun away" and was shot as he was backing away from the suspect with the firearm. (Doc. 81 at 9-10) (citing (Doc. 1 at 3)).

After correctly framing the facts using the testimony and evidence presented by Trujillo, the Court must now determine whether "clearly established law" rendered Officer Hopper's conduct unconstitutional. *See Walker*, 451 F.3d at 1147 (explaining that the court must consider whether "the contours of the right were . . . sufficiently established that a reasonable officer would have known that [his conduct] was unlawful."). While the court should not define "clearly established law at a high level of generality," it "should focus on whether the violative nature of particular conduct was so

clearly established that it put the officer on notice of the unconstitutionality of his actions." *King v. Hill*, 615 F. App'x 470, 477 (10th Cir. 2015) (unpublished) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). Importantly, "the more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." *Morris v. Noe*, 672 F.3d 1185, 1196 (10th Cir. 2012).

In analyzing the use of force against an unarmed suspect, the Court is guided by the foundational principles set forth in *Tennessee v. Garner*, 471 U.S. 1 (1985). Specifically, in *Garner*, the United States Supreme Court concluded that "[w]here the suspect poses no immediate threat to the officers and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so." 471 U.S. at 11. While *Garner* alone cannot "clearly establish" the law in this fact-specific circumstance, it supplies the bedrock principle that "a police officer may not seize an unarmed, non-dangerous suspect by shooting him dead." *Id.*

Following the Supreme Court's holding in *Garner*, the Tenth Circuit Court of Appeals has further refined the limits on the use of deadly force against unarmed suspects. *See King*, 615 F. App'x at 475-79 (collecting cases) (finding it was clearly established that "an officer could not shoot an unarmed man who did not pose any actual threat to the officer or to others."); *Morris*, 672 F.3d at 1197-98 (finding the force used by the defendant police officer was "clearly unjustified" when the suspect "was backing away from [the defendant] in apparent attempt to deescalate the encounter" and "carried no weapon, made no overt threats, and did not get within reach of [the defendant]");

7

*Walker*, 451 F.3d at 1160 ("It was specifically established that where an officer had reason to believe a suspect was only holding a knife, not a gun, and the suspect was not charging the officer and had made no slicing or stabbing motions toward him, that it was unreasonable for the officer to use deadly force against the suspect."); *Zuchel*, 890 F.2d at 275 (concluding a trier of fact could find the defendant officer's conduct was "not objectively reasonable" when "[a]t least one witness estimated [plaintiff's] distance from [defendant] to be 10-12 feet at the time the shots were fired," the plaintiff was "neither charging [the officer] nor stabbing at him, but instead was shot after [the plaintiff] stopped and was trying to explain what was going on," and another witness testified that "she could not see any weapon in [the plaintiff's] hand").

Under *Garner* and its progeny, the Court finds Trujillo has satisfied the second prong of the qualified immunity analysis: it was clearly established that a police officer may not shoot an unarmed man standing more than ten feet from the suspect brandishing the firearm with his arms raised above his head. Having reached this conclusion, the Court will overrule Defendants' first objection to the Chief Magistrate Judge's Proposed Findings.

Next, after determining the law was clearly established at the time of Officer Hopper's conduct, the Court will now address Defendants' second objection, that no material facts remain disputed which preclude the Court from determining that Officer Hopper's conduct was objectively reasonable under the circumstances. While assessing the "totality of the circumstances" that surrounded Officer Hopper in the early morning hours of January 17, 2015, the Chief Magistrate Judge opined that several material facts

remained genuinely disputed, including "the timing and substance of Officer Hopper's verbal command, whether Trujillo complied with Officer Hopper's commands before he was shot … [and] whether Officer Hopper heard or saw gunshots before firing his weapon." (Doc. 81 at 12) (internal citations omitted). The Chief Magistrate Judge then concluded that "an answer to these factual questions is necessary to determine whether the first prong of the qualified immunity analysis is met − whether Officer Hopper violated Trujillo's Fourth Amendment right to be free from excessive force." *Id.* at 14. As a result, the Chief Magistrate Judge recommended that Officer Hopper's qualified immunity defense be denied at the summary judgment stage. *Id.*

The Court disagrees with Defendants' contention that "[q]uestions regarding Trujillo's conduct and location are immaterial to whether Officer Hopper was justified in defending himself when faced with a firearm pointed at him." (Doc. 82 at 9). Rather, at the heart of any excessive force claim is the "totality of the circumstances," including the facts and circumstances confronting the police officer in the moment. *See Graham v. Connor*, 490 U.S. 386, 397 (1989); *Garner*, 471 U.S. at 8-9. In fact, the very "touchstone" of the reasonableness inquiry under the Fourth Amendment is the totality of the circumstances. *Thomson v. Salt Lake City*, 584 F.3d 1304, 1313 (10th Cir. 2009). This inherently requires the court to "pay careful attention to the facts and circumstances of the particular case," including the "extremely relevant" events leading up to the moment before the officer deployed deadly force. *Id.*; *Phillips v. James*, 422 F.3d 1075, 1083 (10th Cir. 2005).

Defendants bear the burden of demonstrating that no genuine disputes of material fact remain. *See Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002) ("In the end, therefore, the defendant still bears the normal summary judgment burden of showing no material facts remain in dispute that would defeat the qualified immunity defense."). Here, many of the parties' actions leading up to Officer Hopper's use of force are contested by differing eye-witness accounts. Both Plaintiff and Defendants produce affidavits, deposition testimony, and trial testimony from competing witnesses who each recall the specific circumstances surrounding Officer Hopper's conduct differently. *See* (Doc. 81 at 11). The competing testimony presented by the parties may "affect the outcome of [this] suit," and is such that "a reasonable jury could return a verdict for the nonmoving party." *Allen v. Muskogee, Oklahoma*, 119 F.3d 837 (10th Cir. 1997) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)) (defining what makes a dispute "genuine" and when facts are considered "material").

At this stage, the Court is not "entitled to weigh evidence or pass on the credibility of witnesses." *Zuchel*, 890 F.2d at 275-76. If the record contains sufficient evidence "which, if believed by a trier of fact, could support a finding that [the defendant's] conduct was not objectively reasonable," summary judgment on the basis of qualified immunity must be denied. *Id.* It is soundly within the province of the jury to reconcile the inconsistent testimony and assess the witnesses' credibility to determine whether the record shows Officer Hopper's conduct was objectively reasonable. *See id.* ("When the record shows an unresolved dispute of historical fact relevant to this immunity analysis, a motion for summary judgment based on qualified immunity should be 'properly denied.'"); *see also*

*Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1251 (10th Cir. 2003) ("[W]here the historical facts material to [the objective legal reasonableness of the officer's actions] are in dispute there is an issue for the jury.") (internal brackets and citations omitted).

In sum, while Defendants' label the factual disputes as minor or immaterial, the substantive law governing the Fourth Amendment inquiry suggests otherwise. After viewing the evidence in the light most favorable to Trujillo, the Court finds a reasonable jury may find facts supporting a conclusion that Officer Hopper violated Trujillo's Fourth Amendment right. As a result, the Court will overrule Defendants' second objection to the Chief Magistrate Judge's Proposed Findings.

### 4. Conclusion

Consistent with the foregoing, the Court finds the law was clearly established at the time of Officer Hopper's conduct. In addition, the Court concludes Defendants have not sufficiently demonstrated that no genuine disputes as to material issues of fact remain to satisfy their burden for summary judgment. As a result of these findings, Defendants' request that Officer Hopper be afforded qualified immunity must be denied. Finally, because liability may be imputed to Officer Hopper after questions of fact are submitted for review before a jury, the Court further finds the claims against the City of Hopper shall remain viable.

The Court will therefore denies Defendants' Motion for Summary Judgment and Memorandum in Support (Doc. 35), adopts the Chief Magistrate Judge's Proposed Findings and Recommended Disposition (Doc. 81), and overrules Defendants' Objections (Doc. 82).

IT IS SO ORDERED.

s/ J. Thomas Marten
J. Thomas Marten, Judge